# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ROBERT KEVIN BOULDS,      §
(TDCJ-CID #1311781)      §
     §
         Petitioner,      §
     §
VS.      §      CIVIL ACTION NO. H-10-1799
     §
RICK THALER,      §
     §
         Respondent.      §

## MEMORANDUM AND OPINION

The petitioner, Robert Kevin Boulds, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a 2005 state felony conviction for aggravated sexual assault of a child under 14 years of age. The respondent filed a motion for summary judgment, (Docket Entry No. 19), with a copy of the state court record. (Docket Entry No. 10). Boulds filed a response. (Docket Entry No. 20). Based on careful consideration of the pleadings, the motion and response, the record, and the applicable law, this court grants the respondent's motion and, by separate order, enters final judgment. The reasons are set out below.

## I.  Background

A jury found Boulds guilty of the felony offense of aggravated sexual assault of a child under 14 years of age. (Cause Number 996316). On June 15, 2005, the jury sentenced Boulds to a 50 year prison term. The First Court of Appeals of Texas affirmed Boulds's conviction on October 19, 2006. *Boulds v. State,* No. 01-05-00596-CR, 2006 WL 2974301, at *4 (Tex. App. -- Houston [1st Dist.] 2006, pet. ref'd) (not designated for publication). The Texas Court of Criminal Appeals refused Boulds's petition for discretionary review on May 9, 2007. Boulds filed an application for state

habeas corpus relief on October 18, 2007.  At Boulds's request, the Texas Court of Criminal Appeals

dismissed it on June 10, 2009.  *Ex parte Boulds,* Application No. 72,089-01 at cover.  Boulds filed

a second application on November 19, 2009, which the Texas Court of Criminal Appeals denied

without written order, on findings of the trial court, without a hearing, on March 24, 2010.  *Ex parte*

*Boulds,* Application No. 72,089-02 at cover.

On May 17, 2010, this court received Boulds's federal petition.  Boulds contends that his

conviction is void for the following reasons:

(1)     he is actually innocent of the crime;

(2)     the prosecutor erred when it failed to provide notice—

        a.      that S.W. had described Boulds's ejaculate as "white creamy stuff"; and

        b.      that a witness for the prosecution would be testifying as an expert;

(3)     the trial court erred when it failed to conduct a reliability hearing outside the presence

        of the jury;

(4)     trial counsel, Hal Hudson, rendered ineffective assistance by failing to:

        a.      object to the portion of the outcry testimony that referred to the complainant

                describing Boulds's ejaculate because the description was not contained in

                the outcry notice;

        b.      request DNA testing of Boulds's car, where the sexual assault was alleged to

                have occurred;

        c.      request a continuance after the State presented a "surprise" expert witness;

        d.      call a defense expert witness to testify;

        e.      notify Boulds of the State's intent to destroy all evidence; and

          f.      verify that the offense took place in Harris County;

(5)      he was denied due process when the State filed a notice of intent to destroy evidence but failed to serve him with the notice; and

(6)      there was insufficient evidence to support his conviction.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 7-9).

## II.    The Applicable Legal Standards

This court reviews Boulds's petition for writ of habeas corpus under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  28 U.S.C. § 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997), citing *Lindh v. Murphy*, 521 U.S. 320 (1997).  Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the merits."  An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural."  *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000).

The AEDPA provides as follows, in pertinent part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

> (e)(1)   In a proceeding instituted by an application for a  writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000).  A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000).  A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495.  In deciding whether a state court's application was unreasonable, this court considers whether the application was "objectively unreasonable."  *Id.* at 1495; *Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000).  A question of fact found by the state court is "presumed to be correct . . . and [receives] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).  Pure questions of fact are governed by § 2254(d)(2). *Martin v. Cain,* 246 F.3d 471, 475 (5th Cir. 2001).  A state court's factual findings are entitled to deference

on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)).  This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules.  Section 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.  Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Boulds is a *pro se* petitioner.  In this circuit *pro se* habeas petitions are construed liberally and are not held to the same standards as pleadings filed by lawyers. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981).  This court broadly interprets Boulds's state and federal habeas petitions. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## III.   Statement of Facts

The appellate court summarized the evidence at trial, as follows:

> The undisputed facts show that, on July 2, 2004, Melissa Whiteside, age 18, asked appellant, a neighbor she had met only once, to drive her from her hometown of Hockley, Texas to Houston so that she could visit friends. Whiteside gave appellant $10 to cover gas for the trip. The complainant, age 12 and a friend of Whiteside, went along for the ride. Like Whiteside, the complainant had met appellant only once.   After dropping Whiteside with her friends in Houston, appellant drove the complainant back to Hockley.

> The complainant testified that, on the return-trip to Hockley, appellant pulled over on an isolated dirt road and sexually assaulted her. Specifically, she stated that appellant crawled over the console, reclined the passenger seat, unbuttoned and pulled her pants to her knees, inserted "his private" into her vagina, and "moved back and forth" for a period of about five minutes.  She further testified that she experienced pain and felt uncomfortable while appellant was on top of her.  Near the end of the alleged assault, the complainant remembered "white stuff" coming from appellant's "private part."

> To the contrary, appellant testified that he did not make any stops on the return-trip to Hockley and did not sexually assault the complainant.  According to appellant, he dropped the complainant back at the Whiteside residence without incident.

> The State presented several witnesses, one of whom was the complainant's neighbor, Carol Shirley.  The record indicates that Shirley was the first person the complainant told about the alleged assault.  As such, Shirley was able to testify to the complainant's outcry statement. She stated specifically that, the day after the attack, the complainant informed her that appellant had put his penis into her vagina.  She further testified that the complainant had asked her to explain the "creamy white stuff."  At the complainant's request, Shirley did not speak with the complainant's mother until she had been notified of the incident by another neighbor a couple of weeks later.

> Harris County Deputies K.E. Tarrance and J.D. Philpot testified for the State.  Deputy Tarrance was dispatched to the complainant's residence after the complainant's mother contacted police.  Although

he did not interview the complainant, Deputy Tarrance testified that he spoke with both her mother and the outcry witness, Carol Shirley. In his interviews with the two women, Deputy Tarrance was able to develop appellant as a suspect in the alleged assault. Deputy Philpot, a detective in the child abuse division of the Harris County Sheriff's Office, further investigated the assault and prepared a photospread for the complainant's review. In the photospread, the complainant identified appellant as the man who assaulted her. Deputy Philpot further testified that no DNA tests were performed and no search warrant was executed to examine appellant's car.

Dr. Roger Collins, an emergency room physician at Tomball Hospital, testified that he examined the complainant for sexually transmitted diseases 14 days after the alleged assault. Dr. Collins indicated that what is traditionally known as a "rape kit" was not performed on the complainant at the election of her mother. Additionally, nearly two weeks had passed since the alleged assault, during which time the complainant had showered and changed undergarments. No physical trauma was observed by Dr. Collins in his examination of the complainant. He testified, however, that, in his opinion, a lack of physical trauma was not unusual in sexual assault cases, especially given the length of time that had passed between the assault and the examination.

*Boulds v. State,* No. 01-05-00596-CR, 2006 WL 2974301, at *2-4 (Tex. App. -- Houston [1st Dist.] 2006, pet. ref'd)(not designated for publication).

## IV.    The Claim Based on Actual Innocence (Ground 1)

Boulds argues that he is actually innocent of the charged offense. (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, p. 7). He states that the testimony of the victim and that of the outcry witness did not "corroborate," (*id.* at 7), and that there was no evidence of a crime.

The Fifth Circuit has held that a free standing claim of actual innocence does not in itself provide a basis for habeas corpus relief. Rather, it is a gateway through which a habeas petitioner must pass to have an otherwise barred constitutional claim considered on the merits. *Dowthitt v. Johnson,* 230 F.3d 733, 741-42 (5th Cir. 2000). In *Schlup v. Delo,* the Supreme Court explained that

7

a petitioner seeking to overcome procedural default by showing "actual innocence" must establish that it is more likely than not that, in light of the new evidence, no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Wright v. Quarterman*, 470 F.3d 581, 590 (5th Cir. 2006); *Foster v. Quarterman*, 466 F.3d at 367.

A prisoner who asserts actual innocence as a gateway to federal habeas review must: (1) present "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"; (2) "that was not presented at trial"; and (3) must show that, in light of this new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006). The petitioner "bears the burden of establishing that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence," that "there is no presumption of innocence at a habeas proceeding" and that the petitioner "comes before the habeas court with a strong -- and in the vast majority of the cases conclusive -- presumption of guilt." The standard "does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir. 2005). Examples of new, reliable evidence include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence. *See Fairman v. Anderson*, 188 F.3d 635, 645 (5th Cir. 1999); *Schlup v. Delo*, 513 U.S. at 327.

Assuming that Boulds asserts actual innocence as a gateway to federal habeas review, he offers no newly discovered evidence in the form of scientific evidence, physical evidence, or

trustworthy eyewitness testimony. His claim of actual innocence provides no basis for relief under 28 U.S.C. § 2254(d)(1).

## V.     The Claim of Ineffective Assistance of Trial Counsel (Ground 4)

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal prosecution the right to effective assistance of counsel. U.S. CONST. amend. VI. To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must first show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The standard requires the reviewing court to presume that counsel exercised reasonable professional judgment. *Id.* at 690. Counsel's performance is deficient only when his "representation [falls] below an objective standard of reasonableness." *Id.* The Fifth Circuit has described that standard as "requiring that counsel research relevant facts and law, or make an informed decision that certain avenues will not be fruitful." *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005), quoting *United States v. Conley*, 349 F.3d 847, 841 (5th Cir. 2003). "A conscious and informed decision of trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). A court measures reasonableness against prevailing professional norms, viewed under the totality of the circumstances. *Strickland,* 466 U.S. at 688. "Judicial scrutiny of counsel's performance is highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The Sixth Amendment does not guarantee

an accused "errorless representation." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (citing

*Moreno v. Estelle*, 717 F.2d 171, 176 (5th Cir. 1983)).

The habeas petitioner must also show prejudice. This requires a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The petitioner must "affirmatively prove," not just allege, prejudice. *Id*. at 693.

Under *Strickland*, a court may look at either prong first; "if either one is found dispositive, it is not necessary to address the other." *United States v. Webster*, 392 F.3d 787, 794 n. 12 (5th Cir. 2004) (quoting *Buxton v. Lynaugh*, 879 F.2d 140, 142 (5th Cir. 1989)). Strategic decisions by counsel generally do not provide a basis for habeas corpus relief. *See Strickland*, 460 U.S. at 689.

Boulds asserts that trial counsel rendered ineffective assistance at trial in several respects. Each is analyzed below.

## A.      The Failure to Object

Boulds first complains that Hudson failed to object to evidence of S.W.'s description of ejaculate as "white creamy stuff." Boulds argues that Hudson should have objected to this testimony on the ground that he never received notice that the outcry statement contained such a description.

In his affidavit to the state habeas court, Hudson testified:

> With respect to whether or not I believed it was beneficial or
> necessary to object to the outcry testimony concerning "What was
> some creamy white stuff." I did not object on the basis that it
> exceeded the scope of the outcry notice, because although it was not
> specifically in the notice the State filed with the court, it was included
> in the offense report. I did have access to the State's file and my
> notes reflect that I was aware of the substance of the audiotape of the

interview of the outcry witness by the police -- I do not know whether I listened to the tape itself or read some sort of summary of the tape. I was aware that the tape does contain the portion of testimony that Mr. Boulds believes I should have objected to.  I also had my investigator interview the outcry witness, and she indicated to him that her conversation with the complainant included details concerning "white creamy stuff."  The outcry witness's statement was consistent with the child's video and her outcry as it is recounted in the probable cause affidavit, both of which included the reference that Mr. Boulds finds objectionable.  I objected to the testimony on the basis of hearsay, and also obtained a running objection.  I clearly did have notice that the witness would testify in the manner she did, and do not believe that an objection on the basis that I did not have notice would have been successful.

*Ex parte Boulds*, Application No. 72,089-01 at 147-148.

The state habeas court found:

13.    According to the credible affidavit of Hal Hudson, counsel did not object to the outcry testimony that referred to the complainant describing the applicant's ejaculate on the basis that the description was not contained in the outcry notice, because counsel did have actual notice of the description.

14.    According to the credible affidavit of Hal Hudson, the description of ejaculate by the complainant as "creamy white stuff" was included in the offense report.

15.    According to the credible affidavit of Hal Hudson, the description of ejaculate by the complainant as "creamy white stuff" was included in the audio taped interview of the outcry witness by police.

16.    According to the credible affidavit of Hal Hudson, Hudson had his investigator interview the outcry witness before trial, and she recounted the victim's description of the applicant's ejaculate as "creamy white stuff."

17.    According to the credible affidavit of Hal Hudson, the outcry witness's recounting of the complainant's outcry, and description of ejaculate, was consistent with the complainant's videotaped interview.

18.   According to the credible affidavit of Hal Hudson, he did not believe an objection to the outcry witness testimony on the basis that it exceeded the scope of the notice filed by the State would have been successful, because Hudson had actual notice from other sources, including ones provided by the State.

19.   The applicant fails to show that Hal Hudson's failure to object to the outcry testimony on the basis that it exceeded the scope of the State's outcry notice fell below an objective standard of reasonableness and that but for the alleged deficient representation, a reasonable probability exists that the results of the proceeding would have been different.

*Ex parte Boulds*, Application No. 72,089-02 at 80-81.

Any objection to the outcry testimony on the ground that Hudson did not receive notice would have been futile.  Counsel cannot be deficient for failing to press a frivolous point.  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *Green v. Johnson,* 160 F.3d 1029, 1036-37 (5th Cir. 1998), *cert. denied,* 525 U.S. 1174 (1999) (citing *Sones v. Hargett,* 61 F.3d 410, 415 (5th Cir. 1995)).  Boulds fails to demonstrate either the deficient performance or the prejudice prong of the *Strickland* analysis.

## B.    The Failure to Test for the Presence of DNA

Boulds alleges that Hudson's failure to have the car tested for DNA was deficient and prejudicial.  S.W. testified that on the ride back from Hockley, Boulds sexually assaulted her in the car.  S.W. testified that in the assault, "creamy stuff" fell on the car seat and carpet.  Boulds argues that Hudson should have had the car tested for DNA.

In his affidavit to the state habeas court, Hudson explained as follows:

Mr. Boulds did not ever ask me to have the interior of the car DNA tested.  I did not have the applicant's car DNA tested, because it wouldn't have proven anything.  There was a slight delay in outcry, and the car was not preserved in the state it would have been

immediately after the alleged assault.  The event occurred on July 2, and the complainant did not make outcry until July 5; the complainant's mother was not informed until July 12th or 13th.  If DNA had been in his car -- it's his car.  DNA in his car would not explain anything.  If DNA was not in his car, the State could have easily explained the absence of DNA as the car having been washed, or that the DNA was all deposited on the complainant and her clothing[.]  The defendant at all times denied anything ever happened and no DNA result would have made that more or less probable.

*Ex parte Boulds*, Application No. 72,089-01 at 148.

The state habeas court found:

> 20.  According to the credible affidavit of Hal Hudson, the applicant never requested Hudson to have the inside of the applicant's car tested for DNA.

> 21.  According to the credible affidavit of Hal Hudson, there was a slight delay in outcry and the applicant's vehicle was not preserved in the state it would have been in immediately following the alleged sexual assault.

> 22.  According to the credible affidavit of Hal Hudson, the presence or absence of DNA inside the applicant's car, when considered along with the facts and circumstances of the case would not have made any issue of fact more or less probable.

> 23.  The applicant fails to show that Hal Hudson's decision not to have the applicant's car tested for DNA fell below an objective standard of reasonableness and that but for the alleged deficient representation, a reasonable probability exists that the results of the proceeding would have been different.

*Ex parte Boulds*, Application No. 72,089-02 at 81.

Given the lapse of time between the alleged assault and when Boulds was charged, Hudson reasonably concluded that there was only a slight possibility that any relevant evidence remained in Boulds's car.  Additionally, because the car belonged to Boulds, the presence of his DNA would not

have been either inculpatory or exculpatory.  Boulds fails to demonstrate either the deficient performance or the prejudice prong of the *Strickland* analysis.

### C.        The Failure to Request a Continuance

Boulds next faults Hudson for failing to request a continuance when the prosecutor called Michelle Faucett as an expert witness.  Hudson objected on the ground that Faucett was not listed as an expert, but the trial court overruled the objection.

The record shows that the prosecutor called Michelle Faucett, and Hudson objected.  The following exchange took place:

> MS. KOLSKI:   Your Honor, the State will call Michelle Faucett.
>
> MS. KOLSKI:    Can you please–
>
> MR. HUDSON:  Your Honor.
>
> THE COURT:    Yes, sir?
>
> MR. HUDSON:     I would have an objection to this witness' testifying. She's not listed on the list of experts.  There was some prior testimony that she was a counselor, and she's not –
>
> THE COURT:    I see your motion. I'm just looking for the State's response.
>
> MR. HUDSON:    It's in there.  I've got a copy.
>
> THE COURT:    I've got it.  Objection sustained.
>
> MR. HUDSON:   Thank you.
>
> MS. KOLSKI:   Your Honor, this witness is not testifying as an expert, she's just testifying in the capacity -- she's not going to testify to any hearsay, just in the capacity of how she knows Savanna.
>
> MR. HUDSON:  She is an expert under what is 39.14(B).

THE COURT:  Retire the jury.

(Jury out.)

THE COURT:  All right.  What is the purpose of her testimony if to establish a relationship between she and the complainant?  The complainant has already said who this witness is, she's a counselor. How are you going to go any further than that?

MS. KOLSKI:  Just the fact that she's Savanna's therapist, that she's gone to therapy with her for X amount of time, this is when she started therapy, this is what -- not what Savanna said but that she's there, what her purpose is when she's there.

MR. HUDSON:  She's still an expert.

MS. KOLSKI:  Counselors can't ever talk about hearsay, it's just what their role is.

THE COURT:  Then why do we have a rule to have people disclose experts?

MS. KOLSKI:  When we do have experts.

THE COURT:  But you're not claiming this is an expert, she just happens to be a counselor that saw the complainant?

MS. KOLSKI:  She's a peer counselor.  She's not a licensed therapist. She has no specialized training.

THE COURT:  All right. I'll overrule your objection.

(Reporter's Record, Vol. III, pp. 131-32).

Faucett testified that she was the sexual-assault program director for a program called Focusing Families.  Faucett testified that she did not have a license or training as a therapist, clinical expertise, or a degree from an accredited college.  She provides free services for families of sexual assault victims.  Faucett first met S.W. on November 3, 2004.  Faucett testified that she was a school counselor and met with S.W. in school for a total of 33 times.

The record shows that Faucett did not testify as an expert. She testified about how she came into contact with S.W. in her position as a school counselor. Faucett did not opine that S.W.'s behavior was consistent with having been sexually assaulted. Faucett offered no testimony suggesting that S.W. would bear lasting emotional scars as a result of the sexual assault.

Boulds argues that the fact that Faucett met with S.W. on 33 occasions suggests that Faucett implicitly determined that S.W. had suffered some lasting emotional distress. S.W.'s own testimony was more explicit. She testified that she was frightened at the time of the assault; that she did not tell Dawn Whiteside about the assault because she did not understand what had happened to her; that she started getting lower grades in school; that she did not feel like doing anything; that she was depressed; and that she began dressing all in black. S.W.'s mother testified that in the weeks after the assault, S.W.'s behavior changed. She began listening to different music, sleeping a lot, wearing baggy clothes, writing graphic dark poetry, and sleeping with her mother instead of in her own bedroom.

The objections Boulds asserts his counsel should have raised would have been futile. Boulds fails to demonstrate either the deficient performance or the prejudice prong of the *Strickland* analysis. Boulds is not entitled to relief on this claim.

### D.      The Failure to Call an Expert Witness

Boulds alleges that his attorney was ineffective for failing to obtain a forensic pathology expert to testify in response to the State's expert witness. Construed liberally, Boulds argues that an expert witness, such as a medical examiner, could have testified that S.W. was not the victim of a sexual assault.

Decisions on the presentation of evidence and witnesses are essentially strategic. Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy. *Wilkerson v. Cain*, 233 F.3d 886, 892-93 (5th Cir. 2000). "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Gray v. Epps,* 616 F.3d 436, 443 (5th Cir. 2010) (quoting *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009)).

Dr. Roger Collins testified that he worked in the emergency room full-time at Tomball Hospital. He examined S.W. for signs of trauma and assault, and tested her for pregnancy and sexually transmitted diseases. Collins did not notice anything unusual during his examination of S.W. He testified that a rape kit is usually performed within 24 hours of the assault, before the victim has changed her undergarments or showered. Dr. Collins testified that the alleged sexual assault on S.W. had taken place two weeks before the medical examination. Any sexual trauma would have healed within two weeks, and a rape kit would not have been informative. Dr. Collins testified that in many instances, there will be no evidence of trauma following a sexual assault. On cross-examination, Hudson asked Collins questions emphasizing the absence of any sign of trauma to S.W.'s genitals.

The state habeas court found:

> 24. The applicant fails to show what expert Hal Hudson should have hired, and further fails to show that expert was available and that expert's testimony would be beneficial to his defense.

25.   The totality of the representation afforded Applicant was sufficient to protect his right to reasonably effective assistance of trial counsel.

*Ex parte Boulds*, Application No. 72,089-02 at 81-82.

The record shows that Hudson conducted a rigorous cross-examination of the State's witnesses.  Dr. Collins, a board certified emergency room physician, testified that S.W. showed no physical trauma to the genital area and that there was no DNA evidence linking Boulds to the sexual assault.  There is no showing of a need for a defense forensic expert.  Failing to call a witness who may have done more harm than good is not unreasonable.  *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988).  Boulds fails to demonstrate either the deficient performance or the prejudice prong of the *Strickland* analysis.

### E.    The Failure to Verify the Location of the Offense

Boulds complains that Hudson failed to verify that the dirt road where the assault allegedly took place was in Harris County.  At trial, the prosecutor introduced State's Exhibit 3, a map showing the boundary between Harris County and Waller County.  S.W. testified that the sexual assault took place while she and Boulds were en route from Houston to Hockley.  (Reporter's Record, Vol. III, p. 44).

The state habeas court found:

10.  In a sexual assault case, venue is proper 1) in any county where the assault is committed, 2) in the county in which the victim is abducted, or 3) in any county through or into which the victim is transported in the course of the abduction or sexual assault.  TEX. CODE CRIM. PROC. art. 13,15.

11.  Even by the applicant's own testimony, at the very least, the complainant in the instant case was transported through Harris County in the course of the sexual assault (3 R.R. 43-44, 84-87).

> 12. The applicant fails to show that Hal Hudson's representation with respect to investigating for venue in the instant case was deficient and that but for deficient representation, a reasonable probability exists that the results of the proceeding would have been different.

*Ex parte Boulds*, Application No. 72,089-02 at 80.

Boulds fails to demonstrate either the deficient performance or the prejudice prong of the *Strickland* analysis.

## F.     The Claim Based on the Cumulative Error Doctrine

Boulds maintains that the cumulative effect of the various errors in his trial merits federal habeas relief. The cumulative error doctrine provides that "an aggregation of non-reversible errors (*i.e.*, plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999). Boulds has failed to establish any error in the conduct of his state trial. Relief is not available under the cumulative error doctrine. *See United States v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001) (no cumulative error where defendant failed to identify single error in jury selection); *Miller v. Johnson*, 200 F.3d 274, 286 (5th Cir.), *cert. denied*, 531 U.S. 849 (2000) (petitioner who failed to demonstrate any error by trial counsel could not establish cumulative error).

Boulds's ineffective assistance claims arise from his disagreement with Hudson's tactical decisions both before and during trial. A "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (internal quotations and citations omitted). The record shows that Hudson

developed and followed a reasonable trial strategy, vigorously cross-examined witnesses during trial, and made difficult strategic decisions about how best to defend Boulds.  The Fifth Circuit has deferred to counsel's judgment about the presentation and questioning of witnesses when such choices are the result of a "conscious and informed decision on trial tactics." *Cotton v. Cockrell,* 343 F.3d 746, 752–53 (5th Cir. 2003) (giving deference to decision not to present two witnesses as part of counsel's decision to pursue a different defense); *see also Green v. Johnson,* 116 F.3d 1115, 1121–23 (5th Cir. 1997) (discussing counsel's decision not to present an expert defense witness after choosing a different course of strategy).  "Although one may want to question some of the tactical decisions made by [Boulds's] counsel, we may not, in hindsight, second-guess counsel's strategy . . . merely because an alternative course of action existed during trial." *Pape v. Thaler*, --- F.3d ----, 2011 WL 2476437 (5th Cir. 2011).  The record contains sufficient evidence to demonstrate that Hudson's decisions resulted from an informed trial strategy and fell within the wide range of trial tactics that constitute reasonable assistance. *Richards,* 566 F.3d at 564.

The state court's decision as to the effective assistance of counsel reasonably applied the law to the facts, consistent with clearly established federal law.  Boulds has not shown a basis for the relief he seeks.  28 U.S.C. § 2254(d)(1).

## VI.   The Claim of Prosecutorial Misconduct Based on the Failure to Disclose Favorable Evidence (Ground 2)

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).  The Supreme Court has consistently held the

prosecution's duty to disclose evidence material to either guilt or punishment applies even when there has been no request by the accused. *Banks v. Dretke*, 540 U.S. at 690 (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)); *United States v. Agurs*, 427 U.S. 97 (1976).  This duty applies to exculpatory and impeachment evidence.  *Strickler v. Greene*, 527 U.S. at 280; *United States v. Bagley*, 473 U.S. 667, 676 (1985).

Undisclosed evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).  A reasonable probability of a different result is shown when nondisclosure puts the case in a different light so as to undermine confidence in the jury verdict. *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995).  "[I]nadmissible evidence may be material under *Brady*." *Spence v. Johnson*, 80 F.3d 989, 1005 n.14 (5th Cir. 1996).  The key is "whether the disclosure of the evidence would have created a reasonable probability that the result of the proceeding would have been different." *Felder v. Johnson*, 180 F.3d 206, 212 (5th Cir. 1999).

Boulds complains that the prosecutor failed to disclose evidence of S.W.'s description of ejaculate as "white creamy stuff."  The record provides no support for this claim.  The State gave notice of its intent to use S.W.'s statement.  (Clerk's Record, Vol. I, p. 49).  The State also provided notice of its intent to use the victim's videotaped statement.  (*Id*. at 51).  Defense counsel testified in his affidavit that though the outcry notice did not mention "white creamy stuff," the offense report contained this description.  An investigator for the defense interviewed the outcry witness and learned that S.W. had used the words "white creamy stuff."  Boulds had notice of the substance of the outcry witness's testimony.  Boulds has failed to show that the prosecutor failed to disclose favorable evidence of the outcry witness's testimony.

Boulds also complains that the State did not designate Melissa Faucett as an expert witness. But as discussed above, Melissa Faucett did not testify as an expert witness. The state habeas court found: "8. The record does not support the applicant's claim that the trial court allowed Michelle Faucett to testify as an expert." *Ex parte Boulds*, Application No. 72,089-02 at 80. Boulds's claim that the prosecutor failed to give notice that Faucett would testify as an expert lacks merit.

The record shows no *Brady* violation. *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998), *cert. denied*, 526 U.S. 1118 (1999). Boulds has not shown that the prosecutor failed to disclose favorable evidence. He is not entitled to federal habeas corpus relief on this claim.

## VII.   The Claim Based on Trial Court Error (Ground 3)

Boulds alleges that the trial court erred in failing to conduct a hearing to determine the admissibility of the outcry witness's testimony and that the defense had no notice that the outcry witness would testify concerning the ejaculate. Boulds also alleges that the trial court erred in allowing S.W.'s testimony to be corroborated with hearsay testimony. Boulds argues that without the outcry witness's testimony, the jury would have had to consider S.W.'s testimony standing alone and balance it against Boulds's categorical denial.

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). A petitioner is entitled to federal habeas relief due to trial error only if it had a substantial and injurious effect or influence on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is

more than a mere reasonable possibility that it contributed to the verdict. It must have had a substantial effect or influence in determining the verdict. *Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999). To be entitled to federal habeas relief due to a trial error, petitioner must show the error actually prejudiced him. *Brecht*, 507 U.S. at 637. A federal habeas court cannot grant relief based on a state trial court's evidentiary ruling unless the error is so extreme that it constitutes a denial of fundamental fairness. *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998). The erroneous admission of prejudicial evidence "does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the [verdict]." *Jackson v. Johnson,* 194 F.3d 641, 656 (5th Cir. 1999).

Boulds raised this issue of trial court error on direct appeal. The Texas appellate court overruled the error, stating:

> In his first point of error, appellant contends that, because the requirements of article 38.072 of the Texas Code of Criminal Procedure were not satisfied, the trial court erred in admitting the complainant's outcry statement. Specifically, appellant complains that (1) the trial court failed to conduct a reliability hearing outside the presence of the jury, as is required by article 38.072, and (2) the outcry witness improperly testified to matters not contained in the summary of the outcry statement provided by the State.
>
> **Standard of Review**
>
> A court's decision that the outcry statement of a child abuse victim is reliable and admissible under article 38.072 is reviewed for an abuse of discretion. *Garcia v. State,* 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Broderick v. State,* 89 S.W.3d 696, 698 (Tex. App. - Houston [1st Dist.] 2002, pet. ref'd). The test for abuse of discretion is whether the court acted arbitrarily or unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex. Crim. App. 1990); *Galliford v. State,* 101 S.W.3d 600, 604 (Tex. App. - Houston [1st Dist.] 2003, pet. ref'd).

**Analysis**

We first address appellant's contention that the trial court failed to conduct a reliability hearing outside the presence of the jury, as is required by article 38.072 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.072(b)(2) (Vernon 2005). Article 38.072 provides a statutory exception to the hearsay rule, allowing statements made by children age 12 and younger to be admitted at trial if the statements were made to the first person 18 years of age or older, other than the defendant, to whom the victim described an alleged offense of sexual abuse in some discernable manner. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a) (Vernon 2005); *Garcia v. State,* 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). Article 38.072 requires, among other things, that the trial court find, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement. *Id.* § 2(b). After conducting a reliability hearing, the trial court is not required to make written findings regarding the reliability of an outcry. *See Villalon v. State,* 791 S.W.2d 130, 136 (Tex. Crim. App. 1990); *see also Gabriel v. State,* 973 S.W.2d 715, 718 (Tex. App. - Waco 1998, no pet.). Instead, the trial court may impliedly find the testimony reliable by overruling a defendant's objections and admitting the testimony. *See Villalon,* 791 S.W.2d at 136; *see also Gabriel,* 973 S.W.2d at 718. Here, the record indicates that, at appellant's request, the trial court retired the jury and heard evidence concerning the circumstances of the outcry statement before allowing Carol Shirley to testify. Following the State's voir dire examination of Shirley, the trial court indicated that it was ready to bring the jury in, and the trial proceeded with Shirley's testimony. Because the trial court allowed Shirley to testify, it impliedly found the testimony to be reliable. Appellant's contention that the court failed to conduct a reliability hearing, as required by article 38.072, is not supported by the record.

We next address appellant's contention that the outcry witness impermissibly testified to matters not contained in the summary of the outcry statement provided by the State. To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1(a). If the complaint on appeal does not comport with the trial objection, the complaint is waived. *Oles v. State,* 965 S.W.2d 641, 643 (Tex. App. - Houston [1st Dist.] 1998), *aff'd,* 993 S.W.2d 103 (Tex. Crim. App. 1999); *see*

*also Skidmore v. State,* 838 S.W.2d 748, 753 (Tex. App. - Texarkana 1992, pet. ref'd) (holding objection that testimony did not meet qualifications of outcry statement or hearsay exception did not preserve error because it did not specifically raise the issue of the State's notice to the defendant).

Here, the only objection made at trial was to hearsay generally. On appeal, appellant argues that Shirley's testimony was improperly admitted because she testified to matters not contained in the summary of the statement provided by the State. Specifically, appellant argues that Shirley's testimony concerning the complainant's questions about the "creamy white stuff" was absent from the summary. Appellant never informed the trial court, however, that the testimony was objectionable because it exceeded the scope of the summary. Therefore, appellant's objection at trial does not comport with his complaint on appeal, and appellant has waived this complaint.

Accordingly, we overrule appellant's first point of error.

*Boulds v. State*, No. 01-05-00596-CR, 2006 WL 2974301, at *2-3 (Tex. App. - Houston [1st Dist.] 2006, pet. ref'd) (not designated for publication).

The Texas Court of Criminal Appeals also refused Boulds's petition for discretionary review. The state habeas court found, "6. The applicant's claim that the trial court failed to conduct an outcry reliability hearing and that the subsequent testimony exceeded the scope of the outcry notice was raised and rejected on direct appeal and need not be reconsidered on habeas." *Ex parte Boulds*, Application No. 72,089-02 at 79-80.

When, as here, one reasoned state court decision rejects a federal claim, subsequent orders upholding or rejecting the same claim are considered to rest on the same ground as did the reasoned state judgment. *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). The *Ylst* Court explained, as follows:

The maxim is that silence implies consent, not the opposite -- and courts generally behave accordingly, affirming without further discussion when they agree, not when they disagree, with the reasons

> given below.  The essence of unexplained orders is that they say
> nothing.  We think that presumption which gives them no effect --
> which simply "looks through" them to the last reasoned decision --
> most nearly reflects the role they are ordinarily intended to play.

*Id*. at 804.

The First Court of Appeals affirmed Boulds's conviction.  The Texas Court of Criminal Appeals refused Boulds's petition for discretionary review.  Because the Court of Criminal Appeals did not issue an opinion in refusing Boulds's petition for discretionary review, this court may look through to the last reasoned state decision, which is the intermediate appellate court's decision. *Ylst v. Nunnemaker*, 111 S. Ct. at 2594 (1991).  The record shows that the trial court considered the testimony of the outcry witness outside the presence of the jury.  The trial court determined that Carol Shirley's testimony was reliable based on the time, content, and circumstances of the statement.  Boulds has not shown that the trial court acted arbitrarily or unreasonably, or without reference to any guiding rules or principles.  The state court decisions were not contrary to clearly established federal law.  Boulds is not entitled to habeas relief on this claim.

## VIII.   The Claim Based on a Denial of Due Process  (Grounds 4E and 5)

In two related claims, Boulds complains of the lack of notice that evidence would be destroyed, alleging that although the State filed a notice of intent to destroy evidence, it failed to serve him with the notice.

On June 17, 2005, the State gave notice of its intent to destroy evidence.  Boulds states that his trial counsel withdrew on June 15, 2005, the date Boulds was convicted.  Defense counsel did not forward to Boulds the State's notice of intention to destroy evidence.

Texas law provides that the State may not destroy evidence unless it first:

> notifies the defendant, the last attorney of record for the defendant, and the convicting court of the decision to destroy the evidence and a written objection is not received by the attorney, clerk, or officer from the defendant, attorney of record, or court before the 91st day after the later of the following dates:
>
> (1)  the date on which the attorney representing the state, clerk, or other officer receives proof that the defendant received notice of the planned destruction of evidence; or
>
> (2)  the date on which notice of the planned destruction of evidence is mailed to the last attorney of record for the defendant.

TEX. CODE CRIM. PROC. ANN. art. 38.39 (Vernon Supp. 2005).

The record shows that the State filed a notice of intent to destroy all evidence. (Clerk's Record, Vol. I, p. 102). Though Boulds complains of the destruction of evidence, he does not describe the nature of the evidence that was destroyed. At trial, the prosecutor introduced the following six exhibits:

> State's Exhibit 1 – line-up warnings;
>
> State's Exhibit 2 – photospread;
>
> State's Exhibit 3 – map of the boundary between Harris County and Waller County;
>
> State's Exhibit 6 – map showing Highway 290 and Katy Hockley Road;
>
> State's Exhibit 7 – map of the subdivision near Highway 290 and Zube Road; and
>
> State's Exhibit 8 – pen packet relating to Boulds's conviction for delivery of a controlled substance in Cause Number 7365 in the 155th Judicial District Court of Waller County, Texas.

The prosecutor did not introduce any DNA evidence. The state habeas court found:

> 26.  The applicant's complaint that he was denied "procedural due process" when the State filed a Notice to Destroy Evidence in the

> primary case and failed to serve it on him fails to allege and prove an
> error that affected the fact or length of his confinement, and is
> therefore not cognizable on habeas. *Ex parte Barber*, 879 S.W.2d
> 889, 891-92 (Tex. Crim. App. 1994).

*Ex parte Boulds*, Application No. 72,089-02 at 82.  The state court's decision was not contrary to

clearly established federal law.  Boulds is not entitled to habeas relief on this claim.

## IX.     The Claim Based on Insufficient Evidence (Ground 6)

Boulds argues that the evidence was insufficient to convict him of aggravated sexual assault

of a child younger than 14 years old.  Boulds argues that there was no testimony from expert

witnesses, such as a medical examiner, establishing that S.W. was the victim of a sexual assault.

Boulds emphasizes the absence of any rape-kit testimony or tests on S.W.'s clothing, and no

evidence recovered from Boulds's car.  Boulds argues that a rape-kit test would have shown no

sexual assault.

Boulds raised this issue on direct appeal.  The appellate court rejected the claim, stating:

> In his second and third points of error, appellant contends that the
> evidence was legally and factually insufficient to support his
> conviction.  Specifically, appellant argues that the lack of physical
> injury, presence of inconsistent testimony, and absence of evidence
> that appellant "targeted" the complainant renders the evidence legally
> and factually insufficient to establish his guilt.
>
> **Standard of Review**
>
> The standard for reviewing the legal sufficiency of the evidence is
> whether, after reviewing the evidence in the light most favorable to
> the verdict, any rational trier of fact could have found the essential
> elements of the crime beyond a reasonable doubt.  *Jackson v.
> Virginia,* 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89, 61 L. Ed.2d
> 560 (1979).  In our factual-sufficiency review, we examine all of the
> evidence neutrally and ask whether proof of guilt is so obviously
> weak as to undermine confidence in the jury's determination or so
> greatly outweighed by contrary proof as to indicate that a manifest

injustice has occurred. *See Zuliani v. State,* 97 S.W.3d 589, 593-94 (Tex. Crim. App. 2003). A jury's decision is not manifestly unjust merely because the jury resolved conflicting views of evidence in favor of the State. *Carty v. State,* 178 S.W.3d 297, 304 (Tex. App. -- Houston [1st Dist.] 2005, pet. ref'd). The jury is the sole judge of the weight and credibility of witness testimony. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Finally, we must consider the most important evidence that the appellant claims undermines the jury's verdict. *Sims v. State,* 99 S.W.3d 600, 603-04 (Tex. Crim. App. 2003).

**Analysis**

The indictment charged that the complainat[sic] was a person younger than 14 years of age and that appellant unlawfully, intentionally, and knowingly caused the penetration of the complainant's sexual organ with his sexual organ. The testimony of a victim standing alone, even when the victim is a child, is sufficient to support a conviction for sexual assault. *See Carty,* 178 S.W.3d at 303. Additionally, outcry testimony admitted in compliance with article 38.072 is considered substantive evidence, admissible for the truth of the matter asserted in the testimony as an exception to the hearsay rule. *See* art. 38.072; *see also Rodriguez v. State,* 819 S.W.2d 871, 873 (Tex. Crim. App. 1991). The complainant testified that appellant put his "private" inside of her vagina and that, at that time, she experienced pain and felt uncomfortable. Additionally, the complainant's testimony was corroborated by Shirley's testimony concerning the complainant's outcry. A rational jury could have concluded that the complainant's testimony alone established the essential elements of aggravated sexual assault of a child beyond a reasonable doubt. Therefore, we hold the evidence is legally sufficient to establish appellant's guilt.

Accordingly, we overrule appellant's second point of error.

Appellant cites as evidence contrary to the verdict, that (1) the complainant did not exhibit signs of physical trauma when she was examined by Dr. Collins, (2) the testimony of the complainant and the testimony of the outcry witness were inconsistent,[FN1] and (3) there was no indication that appellant "targeted" the complainant. In light of Dr. Collins"s testimony that, because nearly two weeks had passed between the assault and the examination, it was not unusual to find a lack of physical trauma in sexual assault cases, it cannot be said that the lack of physical trauma greatly outweighs the complainant's

testimony set out above or renders the verdict clearly wrong or manifestly unjust. Similarly, the alleged testimonial inconsistencies and absence of evidence that the complainant was "targeted" by appellant do not greatly outweigh the complainant's testimony or render the verdict clearly wrong or manifestly unjust. Therefore, we hold the evidence is factually sufficient to establish appellant's guilt.

> FN1. The complainant testified that appellant's "private" was inside her vagina for "about 5 minutes." The outcry witness, Carol Shirley, testified that the complainant told her appellant had "put it [his penis] in her." Appellant argues that these statements are inconsistent because the complainant's testimony indicates that the alleged penetration occurred for a period of about five minutes, whereas appellant interprets Shirley's testimony to mean that appellant put his penis inside the complainant's vagina and then immediately took it out.

Accordingly, we overrule appellant's third point of error.

*Boulds v. State*, No. 01-05-00596-CR, 2006 WL 2974301, at *7-10 (Tex. App. -- Houston [1st Dist.] 2006, pet. ref'd) (not designated for publication).

Boulds also challenged the sufficiency of the evidence in his petition for discretionary review. (Petition for Discretionary Review, No. 1858-06, p. 4). The Texas Court of Criminal Appeals refused Boulds's Petition for Discretionary Review. In so doing, that Texas Court of Criminal Appeals affirmed the appellate court's determination that the evidence was legally sufficient to support the conviction.

Boulds asserts that his conviction should be set aside because some of the testimony was not credible. Boulds's claim is without merit. The victim of the alleged sexual assault testified that at the time of the assault, she was twelve years old and lived in Hockley, Texas. (Reporter's Record, Vol. III, p. 9). She testified she had become friends with the 18-year-old daughter of a teacher from the prior year, and spent time at their home, one street away from her own home. While at the

Whiteside's home, she and her friend met Boulds as he was pushing his baby in a stroller. Two days later, on July 2, 2004, her friend stopped Boulds as he was driving down the street and asked him to give her a ride to Houston. S.W. was in the car. Boulds dropped her friend off in Houston and S.W. got into the front seat for the return trip to Hockley. At that point, Boulds asked S.W. if she liked sex and said that he wanted to make love to her. He pulled the car onto a dirt road, reclined S.W.'s seat, took off her seatbelt, Boulds crawled over the console, pushed S.W.'s pants down to her knees, and penetrated her. S.W. testified that she felt pain and cried but did not say anything because she was afraid. She testified that Boulds moved back and forth for five minutes and "white creamy stuff" came out of his penis. She testified that she used her pants to wipe it off of her leg, but she washed those pants afterwards.

S.W. testified that Boulds told her not to tell anyone about what had happened. He dropped S.W. off at her friend's house. S.W. did not tell her friend's mother, Dawn Whiteside, what had happened. The following day, S.W. did tell Carol Shirley, an adult. S.W. testified that she spoke to the police and a doctor about the assault, and gave a statement at the Children's Assessment Center. S.W. testified that after the assault she became depressed, her performance in school declined, she started dressing in black, and she started counseling. On July 28, 2004, she viewed a photo array and positively identified Boulds as the perpetrator. This evidence amply supported a finding of guilt under the *Jackson* standard. All credibility choices and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v. Dretke,* 398 F.3d 691, 695 (5th Cir. 2005). This federal court must defer to the state appellate court's analysis of the evidence and its determination of the sufficiency of the evidence. *Callins v. Collins,* 998 F.2d 269, 276 (5th Cir. 1993). The fact that some evidence conflicted is not a basis for the relief Boulds seeks.

The jury determined the credibility of all of the witnesses and evaluated the conflicting

testimony and found the State's evidence to be sufficient.  Boulds has failed to show that no rational

trier of fact would have been able to find the essential elements of the offense beyond a reasonable

doubt.  The state court of appeals found Boulds's insufficiency claim lacked merit.  Boulds fails to

rebut the presumed correctness of these findings with clear and convincing evidence or show that

the state court's determination was contrary to or involved an unreasonable determination of the facts

based on the evidence in the record.  Boulds has failed to meet his burden of proof, and no basis for

habeas relief is shown.  Boulds is not entitled to habeas relief on his sufficiency of the evidence

claim.  *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993), *cert. denied*, 510 U.S. 1141 (1994).

## X.    Request for Evidentiary Hearing

Boulds requests an evidentiary hearing.  Section 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in
> State court proceedings, the court shall not hold an evidentiary
> hearing on the claim unless the applicant shows that--
>
> (A)  the claim relies on--
>
> (i)  a new rule of constitutional law, made retroactive to cases on
> collateral review by the Supreme Court, that was previously
> unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered
> through the exercise of due diligence; and
>
> (B)  the facts underlying the claim would be sufficient to establish by
> clear and convincing evidence that but for constitutional error, no
> reasonable factfinder would have found the applicant guilty of the
> underlying offense.

*Id.* The decision whether to conduct an evidentiary hearing is in the court's discretion.  *See Williams*

*v. Taylor*, 529 U.S. 420, 436 (2000) (stating that it was "Congress' intent to avoid unneeded

evidentiary hearings in federal habeas corpus" proceedings); *Conner v. Quarterman,* 477 F.3d 287, 293 (5th Cir. 2007) (citing *Roberts v. Dretke,* 381 F.3d 491, 497 (5th Cir. 2004) (citation omitted)); *McDonald v. Johnson,* 139 F.3d 1056, 1060 (5th Cir. 1998).

If there is a factual dispute that, if resolved in the petitioner's favor, would entitle him to relief, and the State has not afforded the petitioner a full and fair hearing, the petitioner is entitled to an evidentiary hearing. *Clark v. Johnson,* 202 F.3d 760, 766 (5th Cir. 2000); *Perillo v. Johnson,* 79 F.3d 441, 444 (5th Cir. 1996). A petitioner is not entitled to an evidentiary hearing "if his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." *Young v. Herring,* 938 F.2d 543, 559 (5th Cir. 1991). "If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require." Rule 8 of the Rules Governing Section 2254 Cases.

This court has been able to resolve all issues raised in this case based on the pleadings and state-court records. Boulds has failed to provide a basis for an evidentiary hearing. An evidentiary hearing is not required because there are no relevant factual disputes that would require development to assess the claims. *Robinson v. Johnson,* 151 F.3d 256, 268 (5th Cir. 1998), *cert. denied,* 526 U.S. 1100 (1999). Boulds's request for an evidentiary hearing, (Docket Entry No. 2, p. 3), is denied.

## XI.    Conclusion

The respondent's motion for summary judgment, (Docket Entry No. 19), is granted. Boulds's petition for a writ of habeas corpus is denied. This case is dismissed. Any remaining pending motions are denied as moot.

Under the AEDPA, a petitioner must obtain a certificate of appealability before appealing a district court's denial of habeas relief. 28 U.S.C. § 2253(c)(2). A certificate of appealability will

be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (citation and internal quotation marks omitted).

The analysis "requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322 (2003). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 1040 (citing *Slack v. McDaniel*, 529 U.S. 473, 484). A district court may deny a certificate of appealability on its own without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). This court determines that Boulds has not made "a substantial showing of the denial of a constitutional right." Therefore, a certificate of appealability from this decision will not issue.

SIGNED on August 1, 2011, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge